**Ileene GRAY, formerly Ileen Heffron, Claimant–Appellant,**

v.

**Harry ROTH, Fiduciary of the Estate of Joseph Heffron, Defendant–Appellee.**

No. 87–1416.

Court of Appeals of Iowa.

Jan. 26, 1989.

Thomas C. Fritzsche, Bettendorf, for claimant-appellant.

Scott H. Walters of Walter Newport & Associates, Davenport, for defendant-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

Claimant appeals from a district court judgment determining that claimant had no interest in decedent's U.S. Savings Bonds. Claimant contends that the district court erred in: (1) finding that the property distribution provisions of the Arkansas divorce between claimant and decedent giving claimant an interest in the bonds were void for lack of in personam jurisdiction over the decedent; and (2) determining that decedent's act of making claimant a co-owner of the bonds after their marriage did not constitute a gift of one-half the value of the bonds.

Ileene and Joseph were married in Arkansas on August 3, 1977. At the time of the marriage, Joseph was sole owner of several U.S. Savings Bonds. After their marriage, Joseph had his bonds reissued in his and Ileene's names as co-owners.

On May 24, 1978, Joseph returned to Iowa after having removed the savings bonds from the bank and taking one-half of the parties' checking account. Ileene commenced divorce proceedings in Arkansas on June 2, 1978, and secured a restraining order enjoining each party from disposing of any property belonging to the parties. Joseph was informed of the proceedings by certified mail in July 1978. Joseph never appeared in Arkansas, but did retain an Iowa attorney.

From July 31 until August 22, 1978, Joseph cashed the bonds. On September 14, 1978, Ileene received a default divorce decree which provided that the bonds should remain jointly owned. The Arkansas court indicated that it had jurisdiction over the parties. Ileene made no attempt to secure the bonds until this action.

Joseph died on February 3, 1984. On September 4, 1984, Ileene filed this claim seeking recovery for her alleged interest in the U.S. Savings Bonds. The district court rejected Ileene's claim and she appeals.

Our standard of review in this probate matter is for correction of errors at law. *Estate of Voelker*, 252 N.W.2d 400, 402 (Iowa 1977). If the trial court's findings of fact are supported by substantial evidence and were not induced by an erroneous view of the law, they will stand. *Id.* We must construe the evidence in the light most favorable to the trial court's judgment, and this court will not weigh the evidence or pass on the credibility of witnesses. *Hubby v. State*, 331 N.W.2d 690, 694 (Iowa 1983). A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. *Id.*

I. The claimant contends the trial court erred in determining that the property distribution provisions of the Arkansas divorce decree between claimant and the fiduciary's decedent were void because the Arkansas court did not have in personam jurisdiction over the decedent. The defendant asserts that the trial court did not err.

An independent action may be maintained to determine property rights after the dissolution of the marital status by divorce where the divorce court does not have jurisdiction to determine property rights. 24 Am.Jur.2d Divorce and Separation § 686 (1983). Death of one of the parties does not bar the vacation of an invalid divorce decree for the purpose of establishing property rights. *In re Roedell's Estate*, 253 Iowa 438, 442, 112 N.W. 2d 842, 844–45 (1962).

The general rule regarding a divorce issued in a foreign state is that the decree is presumptively entitled to full faith and credit unless it is affirmatively shown that the court did not have jurisdiction. *Cooper v. Cooper*, 217 N.W.2d 584, 586 (Iowa 1974). The burden of impeaching such a decree rests on the party who asserts its invalidity. *Id.*

There is no question that Arkansas had jurisdiction to dissolve the parties' marriage. *See* Restatement (Second) of

Conflicts § 71 (1971). However, at issue is the jurisdiction over the bonds. Without in personam jurisdiction, the Arkansas court could not order the bonds be held in co-ownership. *See In re Marriage of Vogel*, 293 N.W.2d 215, 216 (Iowa 1980). To the extent it purports to do so, the Arkansas decree is void if found to be lacking in personam jurisdiction. *Vanderbilt v. Vanderbilt*, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456, (1957).

The trial court found that constructive notice of the divorce proceedings was insufficient to confer in personam jurisdiction over decedent in an Arkansas court. A state has power to exercise judicial jurisdiction over a person if the person's relationship to the state is such that the exercise of jurisdiction is reasonable. Restatement (Second) of Conflicts § 24(1). Sufficient relationships include: presence in the state; domicile; residence; consent; and personal appearance. Not finding a reasonable relationship between decedent and Arkansas, the trial court found in personam jurisdiction lacking.

The trial court correctly applied the law to the facts. First, there is no evidence of presence in the state at the relevant time, consent, or personal appearance. Second, after the ten months decedent resided with the claimant in Arkansas, he returned to his residence in Iowa. Finally, since decedent did not intend to return to Arkansas, the trial court did not consider Arkansas his domicile. Therefore, none of the pertinent relationships existed to give Arkansas in personam jurisdiction.

This conclusion is supported by sufficient evidence. Decedent lived in Davenport, Iowa, for approximately ten years before moving to Alaska in 1942. He lived in Alaska with his wife, claimant's sister, until she died. From 1965 to 1977, decedent spent the winters in Texas and the summers in Iowa. Each spring and fall, he stopped on his way to visit the claimant in Arkansas.

From 1967 to 1982 (except for the ten months in Arkansas), decedent lived in Iowa in his camper on property owned by the defendant, executor of the estate, in Clinton County. Due to declining health, in 1982 decedent moved to an apartment in DeWitt, Iowa. During this time, decedent used his or the executor's Iowa address for official matters such as his drivers license, mail, and tax returns.

■ A domicile once acquired continues until a new one is perfected by the concurrence of three essential elements: (1) a definite abandonment of the former domicile; (2) actual removal to and physical presence in the new domicile; (3) a bona fide intention to change and to remain in the new domicile permanently or indefinitely. *Julson v. Julson*, 255 Iowa 301, 305, 122 N.W.2d 329, 331 (1963).

Domicile is largely a matter of intent, the intent to remain permanently or indefinitely in the location. *Id.* The intention to change one's domicile must be a present and fixed intention and not dependent upon the happening of some future or contingent event.

Decedent resided in Arkansas from approximately August 3, 1977, when he was married to claimant, until May 24, 1978, when they separated and he returned to Iowa. He took all of his personal belongings with him, the bonds, and one-half of the checking account. There is no evidence that decedent ever returned to Arkansas. The trial court found that decedent did not intend to return to Arkansas. From this evidence, it is reasonable to infer that both his residence and domicile were in Iowa at the time of service.

Decedent may have established a residence while in Arkansas, but it is reasonable to infer from the evidence that he did not have a domicile there at the time of service. Therefore, we find that the trial court did not err when it determined Arkansas lacked in personam jurisdiction.

■ Furthermore, contrary to claimant's argument, even if Arkansas had determined that it was the domicile of decedent, in the absence of personal jurisdiction, the district court was not precluded from re-examining the question of domicile. Restatement (Second) of Conflicts § 71 comment b. The forum correctly applied its own rules

of domicile when determining the judicial jurisdiction of Arkansas. Restatement (Second) of Conflicts § 13 comment b. Having correctly applied the law to the facts, we find the trial court did not err on this issue.

II. Claimant also contends that the trial court erred in concluding that decedent had not made a gift to claimant of a property interest in the bonds. She claims that Arkansas law, via its divorce decree, had formally adjudicated the bonds as jointly-owned property. Similarly, according to the claimant, Iowa law supports the finding of a gift to her of the bonds. Therefore, she is seeking her share of the money from the bonds.

Since we have already determined that the Arkansas decree was void with regard to the ownership of the bonds, we do not need to discuss further her claim that Arkansas law determined the bonds to be jointly owned property with regard to Iowa law.

■ The trial court concluded that decedent, whose name appeared on the bonds as a co-owner, could cash the bonds without the knowledge or consent of the claimant. This result is a correct application of the law regarding bonds. Where bonds are registered in two or more names, they are considered co-owned property, which is not the equivalent of joint tenancy under state law. *United States v. Stockyards Bank of Louisville*, 231 F.2d 628, 630 (6th Cir.1956).

■ To meet the requirements of a gift, there must be: (1) donative intent; (2) delivery; and (3) acceptance. *Raim v. Stancel*, 339 N.W.2d 621, 623 (Iowa App. 1983). The intent of the grantor is the controlling element. If there is a condition as to the vesting of title of the property, the gift fails. *Id.* The donor must have a clear intention to pass all right, title, and dominion over the gift to the donee. *Varvaris v. Varvaris*, 255 Iowa 800, 803, 124 N.W.2d 163, 165 (1963).

By leaving his name on the bonds as co-owner, decedent retained control over the bonds. The extent of his ownership is a question of fact. *Stockyards Bank*, 231

F.2d at 630. One co-owner may as a matter of fact be the sole owner, a half-owner, or some other fractional owner. "Any person whose name appears on the bonds as a co-owner may cash the bonds without the knowledge or consent of the other party." *Id.* This ability to cash in the bonds is evidence of decedent's intent *not* to pass all right, title, and dominion over the gift to the claimant.

Substantial evidence supports the trial court's conclusion that no gift was made. The bonds were placed in a jointly-held safety deposit box. As joint lessee of the box, the bank could not prevent decedent from removing the bonds. Therefore, the trial court found both parties had equal access to them.

Decedent owned the bonds before he married the claimant. He was the sole contributor towards the purchase of them. Claimant testified that she would not have cashed in a bond without discussing it with the decedent. Clearly decedent did not relinquish control over the bonds. No gift was completed. Construing the evidence in the light most favorable to the trial court, we find that substantial evidence exists to support the trial court's decision. We find no error in the application of the law. Therefore, the decision of the trial court is affirmed.

AFFIRMED.