Mr. Charlie Daniels Commissioner of State Lands State of Arkansas State Capitol Building Little Rock, Arkansas 72201
Dear Mr. Daniels:
This is in response to your request for an opinion regarding the collection of delinquent personal property taxes. You have posed the following questions:
 1. Are the methods of seizure and sale of personal property as outlined in A.C.A. § 26-36-206 constitutional under both the Arkansas and United States Constitutions?
 a. If the answer to question one is "no" then what specific legislative measures would be needed to bring § 26-36-206 into compliance with either the Arkansas or United States Constitutions or both?
 b. If the answer to question one is "yes" then what would be the proper sequence of steps for the collector to take in seizing and selling personal property for these taxes?
 2. Are the methods for garnishment of a delinquent taxpayer's assets as outlined in A.C.A. § 26-36-207 constitutional under both the Arkansas and United States Constitutions?
 a. If the answer to question two is "no" then what specific legislative measures would be needed to bring § 26-36-207 into compliance with either the Arkansas or United States Constitutions or both?
 b. If the answer to question two is "yes" then what would be the proper sequence of steps for the collector to take in instituting a garnishment proceeding against a delinquent taxpayer and actually collecting the delinquent taxes?
It is my opinion that in all likelihood neither A.C.A. § 26-36-206 nor A.C.A. § 26-36-207 violate the Arkansas or United States Constitutions. In my opinion, this conclusion is supported by general authority for the collection of delinquent taxes through distraint and garnishment and the holdings of cases from other jurisdictions interpreting similar statutes.
Initially, it should be emphasized that statutes are presumed constitutional, and if it is possible to construe a statute so as to pass constitutional muster, the Arkansas Supreme Court will do so. PortsPetroleum Co. v. Tucker, 323 Ark. 680, 916 S.W.2d 749 (1996). In fact, all doubts are resolved in favor of constitutionality. Reed v. Glover,319 Ark. 16, 889 S.W.2d 729 (1994). A clear incompatibility between a statute and the Constitution must be shown before the statute will be held unconstitutional. Pogue v. Cooper, 284 Ark. 105, 679 S.W.2d 207
(1984). Additionally, the burden of proving a statute unconstitutional is upon the party challenging it. Clinton v. Bonds, 306 Ark. 554,816 S.W.2d 169 (1991).
Question 1 — Are the methods of seizure and sale of personal property asoutlined in A.C.A. § 26-36-206 constitutional under both the Arkansas andUnited States Constitutions?
Arkansas Code Annotated § 26-36-206 (Repl. 1992) provides:
 (a) At any time after October 10 in each year, after taxes may be due, the collector shall distrain sufficient goods and chattels belonging to the person charged with taxes levied upon the personal property, to pay the taxes due upon the personal property of the person and a penalty of twenty-five percent (25%) thereon, which shall be collected by the collector and paid into the county school fund, and the costs that may accrue, and shall immediately proceed to advertise it in three (3) public places in the county, stating the time when and the place where the property shall be sold.
 (b)(1) If the taxes for which property is distrained, and costs which shall accrue thereon are not paid before the day appointed for sale, which shall not be less than ten (10) days after taking the property, the collector shall proceed to sell the same at public vendue, or so much thereof as will be sufficient to pay the taxes and the costs of the distress and sale.
 (2) He shall not distrain any goods and chattels for taxes levied on real property, except as provided in § 26-3-204.
 (c)(1) The collector is authorized and empowered to levy on and sell the goods and chattels of the person liable for taxes provided, in the same manner and under the same restrictions as goods and chattels are required to be levied and sold under execution on judgment at law, when not inconsistent with the provisions of this subchapter.
 (2) No goods and chattels of any person shall be exempt from levy and sale.
 (d) The collector shall be allowed the same fees for making distress and sale of goods and chattels for the payment of taxes which are allowed by law to sheriffs for making levy and sale of property on execution for traveling fees to be computed at fifty cents (50 cents) for each delinquent visited, without regard to the distance traveled.
Pursuant to A.C.A. § 26-36-206, once personal property taxes become delinquent, the collector shall distrain sufficient goods and chattels to pay the taxes due and a penalty of twenty-five percent. The collector shall immediately advertise the sale in three public places in the county; the notice must include the time when and the place where the property shall be sold. The day of the sale, however, may not be less than ten days after the taking of the property. If the taxes and costs accrued are not paid before the day appointed for the sale, the collector shall sell so much of the property at public auction as will be sufficient to pay the taxes and the costs of the distress and sale. It should also be noted that the collector may generally levy on and sell the goods and chattels of the taxpayer in the same manner and under the same restrictions as goods and chattels are required to be levied and sold under execution on judgment at law.
The United States Supreme Court has commented that the power to distrain personal property for the payment of taxes is almost as old as the common law. Springer v. United States, 102 U.S. 586 (1880). It is generally required that a distress for taxes shall be preceded by a demand on the taxpayer for their payment and his refusal or neglect to comply. 84 C.J.S. Taxation § 694 (1954). My analysis of A.C.A. § 26-36-206 is premised upon the assumption that the collector has complied with all relevant statutes such as the statutes regarding the actual assessment and collection of taxes (as opposed to delinquent taxes).
The Fourteenth Amendment to the United States Constitution is the first constitutional provision which comes to mind regarding the validity of A.C.A. § 26-36-206. The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." See also Ark. Const. Art. 2, § 8. The United States Supreme Court has concluded that because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause. McKesson Corp. v. Florida Alcohol Tobacco Div.,496 U.S. 18 (1990). The Court, however, also stated:
 [I]t is well established that a State need not provide predeprivation process for the exaction of taxes. Allowing taxpayers to litigate their tax liabilities prior to payment might threaten a government's financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult. To protect government's exceedingly strong interest in financial stability in this context, we have long held that a State may employ various financial sanctions and summary remedies, such as distress sales, in order to encourage taxpayers to make timely payments prior to resolution of any dispute over the validity of the tax assessment.
(Emphasis supplied.) Accordingly, a taxpayer must be given the opportunity to be heard at a meaningful time and in a meaningful manner regarding the exaction of a tax; however, the State may employ summary remedies such as distress sales in order to encourage taxpayers to make timely payments.[1]
In 1905, the United States Supreme Court interpreted an Ohio statute nearly identical to our distraint statute. Scottish Union NationalIns. Co. v. Bowland, 196 U.S. 611 (1905). The statute provided that when taxes were past due the county treasurer could distrain sufficient goods and chattels to pay the taxes remaining due and proceed to advertise the goods and chattels in three public places stating the time when and the place where such property would be sold. The statute further provided that if the taxes were not paid before the day appointed for such sale, which could not be less than ten days after the taking of the property, the treasurer was to sell sufficient property at public vendue to pay the taxes and the costs of the distress and sale. The delinquent taxpayer, an insurance company, asserted that the distraint of its property for the collection of taxes constituted the taking of its property without due process of law. The Court concluded that the taxes were lawfully assessed and that no constitutional right of the taxpayer company was violated by seizing its property under such circumstances.
The Minnesota Supreme Court has also interpreted a statute that authorized the sheriff to distrain goods and chattels if unpaid personal property taxes were not paid on demand. C.N. Nelson Lumber Co. v.McKinnon, 63 N.W. 630 (Minn. 1895). The statute provided for sale of the distrained goods and chattels on no less than ten days' notice. The appellant taxpayer asserted that the statute was unconstitutional because it provided for issuance of final process without notice to the party whose property was to be seized, did not give the taxpayer an opportunity to be heard, and attempted to deprive the taxpayer of his property without due process of law. The court concluded that the summary remedy of distress for the collection of taxes satisfied due process of law and was constitutional. More recently, the Supreme Court of Washington recognized that the concept of due process requires that the property owner be given some notice reasonably calculated to inform him of the sale, since that sale directly affects the property owner's legal rights. Devine v. Whacom County, 427 P.2d 731 (Wash. 1967) (court held tax sale was invalid for lack of a sufficient distraint). The court, however, recognized that the distraint of personal property accomplishes at least two purposes: (1) provides security for tax delinquencies, and (2) provides notice to the delinquent property owner that his property is in immediate danger of being sold.
Arkansas Constitution Article 9, §§ 1 and 2, are additional provisions of the Arkansas Constitution that must be considered regarding the validity of A.C.A. § 26-36-206. Article 9, § 1, provides that the personal property of any resident "who is not married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of two hundred dollars in addition to his or her wearing apparel, shall be exempt from seizure on attachment, or sale on execution, or other process from any court issued for the collection of any debt by contract." Article 9, § 2, contains a comparable provision that provides a five hundred dollar exemption to any resident who is married or the head of a household. At first glance, it appears that A.C.A. § 26-36-206(c)(2), which provides no goods or chattels of any person shall be exempt from levy and sale, might be contrary to Ark. Const. Art. 9, §§ 1 and 2. The Arkansas Supreme Court, however, has held that the exemptions found in Art. 9, §§ 1 and 2, apply to debts incurred as the result of a contract and do not apply to a liability created by statute. Watson v. State Dept. of Finance and Admin., 283 Ark. 287,675 S.W.2d 368 (1984). The court concluded that the debt incurred for delinquent sales and income taxes was a liability created by statute. Similarly, it is my opinion that any debt for delinquent personal property taxes would be a liability created by statute rather than a debt incurred as the result of a contract.
I find no other provisions in either the United States or Arkansas Constitutions that appear to prohibit the procedure authorized by A.C.A. § 26-36-206. Accordingly, it is my opinion that in all likelihood A.C.A. § 26-36-206 does not violate the Arkansas or United States Constitutions.
Question 1a — If the answer to question one is "no" then what specificlegislative measures would be needed to bring § 26-36-206 into compliancewith either the Arkansas or United States Constitutions or both?
In light of the response to Question 1, an answer to this question is unnecessary.
Question 1b — If the answer to question one is "yes" then what would bethe proper sequence of steps for the collector to take in seizing andselling personal property for these taxes?
Please see my response to Question 1; A.C.A. § 26-36-206 provides the sequence of steps for the collector to take in seizing and selling personal property. In addition, specific questions regarding the proper distraint of a particular piece of property, the advertisement in three public places, the holding of the public auction, or other factually specific matters are beyond the scope of an Attorney General opinion and should be addressed in the first instance to local counsel.
Question 2 — Are the methods for garnishment of a delinquent taxpayer'sassets as outlined in A.C.A. § 26-36-207 constitutional under both theArkansas and United States Constitutions?
Arkansas Code Annotated § 26-36-207 (1987), entitled "Garnishment proceedings authorized," provides:
 (a) If the tax upon personal property, moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise of any person, association, or corporation shall remain unpaid after October 10 in any year and the collector is unable to find any personal property of the person, association, or corporation whereon to levy to make the taxes then due, then the collector shall present the account for taxes to any person who may be indebted to the person, association, or corporation, and demand the payment thereof. The person to whom it shall be presented shall pay over to the collector the amount of the taxes that he owes and take the collector's receipt therefor. The receipt shall be deemed and taken in all courts of this state as payment on his indebtedness to the full amount expressed on the collector's receipt.
 (b) If the person should fail or refuse, on demand, to pay over the amount of the tax that he owes to the collector, the collector shall file a statement of the amount of the tax with the person so refusing, which shall operate as a garnishment upon the person so served. The collector shall proceed to collect the taxes in the manner fixed by law in cases of garnishment.
 (c) No person shall be compelled to pay any debt before it may be due nor a greater amount than he may be owing the person, corporation, or association.
 (d) The cost of garnishment shall be paid by the party refusing to pay the taxes when so requested.
Thus, if the collector is unable to find any personal property of the delinquent taxpayer, the collector shall present the account for taxes to any person who may be indebted to the delinquent taxpayer. The person to whom the account for taxes is presented shall pay over to the collector the amount of the taxes that he owes. The person may not be compelled to pay a debt before it is due nor may he be compelled to pay a greater amount than he owes the delinquent taxpayer. If the person to whom the account for taxes is presented refuses to pay the amount of the tax that he owes the collector, the collector must file a statement of the amount of the tax with that person and the collector must initiate garnishment procedures.[2]
As discussed in my response to Question 1, the remedy of the government to enforce collection of taxes by the summary administrative method of distraint is a constitutionally valid expedient for the collection of taxes. United States v. Manufacturers Trust Co., 198 F.2d 366 (2nd Cir. 1952). In Manufacturers Trust, the court recognized that funds on deposit in a savings account in a bank could be distrained. The court noted that the remedy of distraint had been extended by statute in 1926 to permit the seizure of the property of a taxpayer in the hands of a third party. Similarly, the Kentucky Court of Appeals has upheld the use of the distraint process against persons owing money to the delinquent taxpayer. Kentucky v. Collins May, 593 S.W.2d 887 (Ky.Ct.App. 1980).
Once again, my analysis of the provision in question is premised upon the assumption that the collector has complied with all relevant statutes such as the statutes regarding the actual assessment and collection of taxes (as opposed to delinquent taxes). Also, as with A.C.A. §26-36-206, my initial concern with A.C.A. § 26-36-207 is based upon due process. Section 26-36-207 authorizes the collector to demand payment from any person who may be indebted to the taxpayer, but the section does not require that any notice be given to the taxpayer. The Idaho Court of Appeals, however, has concluded that administrative garnishments to collect tax deficiencies do not violate a taxpayer's right to due process if the taxpayer has been provided notice and a reasonable opportunity to be heard concerning the assessed deficiency. Bills v. State of Idaho,Department of Revenue and Taxation, 714 P.2d 82 (Idaho App. 1986);Parsons v. Idaho State Tax Commission, Department of Revenue andTaxation, 716 P.2d 1344 (Idaho App. 1986). See also McKesson Corp. v.Florida Alcohol Tobacco Div., supra.
In Bills, the court rejected the argument that because the administrative garnishment was conducted without notice to the debtor and without first obtaining a judgment from a court, the procedure constituted a prejudgment attachment violative of Sniadach v. Family Finance Corp.,395 U.S. 337 (1969). In Sniadach, the Court concluded that, absent notice and a prior hearing, a prejudgment garnishment procedure whereby wages are frozen before trial of the main suit without any opportunity for the wage earner to be heard or tender any defense violated the fundamental principles of due process. The United States Supreme Court, however, has held that a statute which permitted a judgment creditor to garnish the debtor's wages without affording the debtor prior notice or the opportunity to be heard was not violative of the due process clause of theFourteenth Amendment. Endicott Johnson Corp. v. Encyclopedia Press, Inc.,266 U.S. 285 (1924). The Court stated that, after a judgment has been rendered against a defendant, further notice and hearing is not required before supplemental proceedings are taken to reach his property in satisfaction of the judgment. See also Wanex v. Provident State Bank ofPreston, 454 A.2d 381 (Md. 1983) (in post-judgment garnishment, adequate notice of the garnishment is afforded when defendant attempts to retrieve his assets and discovers they have been frozen). The Ninth Circuit Court of Appeals has concluded that an administrative procedure whereby the California Tax Board ordered a delinquent taxpayer's employer to withhold tax was "more like post-judgment execution" and was not governed bySniadach. Randall v. Franchise Tax Board of the State of California,453 F.2d 381 (9th. Cir. 1971); see also Greene v. Franchise Tax Board,103 Cal. Rptr. 483 (Cal.Ct.App. 1972) (the requirements of due process are met when the taxpayer's tax liability has been established by an administrative or judicial proceeding at which he had notice and an opportunity to be heard).
In Franchise Tax Board of California v. United States Postal Service,467 U.S. 512 (1984), the Court concluded that the California Tax Board's orders to withhold amounts of tax delinquencies from employee wages were identical to the judgment of a court. The California Tax Board issued an administrative order requiring the Postal Service to withhold the amount of delinquent state income taxes from wages due postal employees. The taxpayers had been given notice and an opportunity for a hearing prior to the assessment of the deficiency. In upholding the validity of the collection procedure, the Court said:
 The operation of California's tax collection process makes it clear that there is no meaningful difference between an order to withhold issued by the Board and a garnishment order issued by a court. Under state law an assessment that has been validly made against a taxpayer operates to impose an absolute liability for the tax that may not be contested except in an action seeking refund of amounts already paid. Indeed state law is unequivocal in requiring employers to honor orders to withhold — no defense is permitted. Thus, a California tax assessment, like a federal tax assessment, operates in a way that is functionally indistinguishable from the judgment of a court of law; it creates an absolute legal obligation to make payment by a date certain:
 "Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. Default in meeting the obligations calls for some procedure whereby payment can be enforced. The statute might remit the Government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. But taxes are the life-blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt." Bull v. United States, 295 U.S. 247, 259-260, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935).
 Thus, in operation and effect the Board's orders to withhold are identical to the judgment of a court. They give rise to a binding legal obligation to pay the assessed amounts; the taxpayer may no more dispute this liability than the liability under any other judgment.
In sum, it is my opinion that where taxes have been assessed and payment demanded, and the taxpayer has been given a reasonable opportunity to be heard concerning the alleged deficiency, the taxpayer is not entitled to further notice before a financial sanction such as garnishment is taken to reach his property in satisfaction of the debt. See Bills v. State ofIdaho, Department of Revenue and Taxation, supra; Franchise Tax Board ofCalifornia v. United States Postal Service, supra; McKesson Corp. v.Florida Alcohol Tobacco Div., supra.
I find no other provisions in either the United States or Arkansas Constitutions that appear to prohibit the procedure authorized by A.C.A. § 26-36-207. Accordingly, it is my opinion that in all likelihood A.C.A. § 26-36-207 does not violate the Arkansas or United States Constitutions.
Question 2a — If the answer to question two is "no" then what specificlegislative measures would be needed to bring § 26-36-207 into compliancewith either the Arkansas or United States Constitutions or both?
In light of the response to Question 2, an answer to this question is unnecessary.
Question 2b — If the answer to question two is "yes" then what would bethe proper sequence of steps for the collector to take in instituting agarnishment proceeding against a delinquent taxpayer and actuallycollecting the delinquent taxes?
Please see my response to Question 2; A.C.A. § 26-36-207 sets out the sequence of steps for instituting a garnishment proceeding in connection with delinquent taxes. In addition, factually specific matters regarding the implementation of garnishment proceedings should be addressed in the first instance to local counsel.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] In Arkansas, any person who has personal property assessed for taxation may appear before the county court in order to object to the levy of any specific tax for illegality. A.C.A. § 26-25-105 (Repl. 1992). If the county court rules against the objection, the person objecting may appeal to circuit court. Id. The person, however, must give a bond to stay the collection of the tax. Id. Also, any property owner may apply to the county equalization board for the adjustment of the assessment of his property. A.C.A. § 26-27-317 (Repl. 1992). The property owner may appeal the decision of the equalization board to the county court. A.C.A. 26-27-318 (Repl. 1992). Finally, if a person has paid taxes erroneously assessed on personal property, the taxpayer is entitled to a refund. A.C.A. § 26-35-901 (Repl. 1992).
[2] In Op. Att'y Gen. No. 91-308, this office opined that under A.C.A. § 26-36-207 a judgment was not a prerequisite to the initiation of garnishment procedures in connection with delinquent taxes. In addition, it should be noted that garnishment proceedings are generally governed by A.C.A. §§ 16-110-401 et. seq. (1987 Supp. 1995). In Bob HankinsDistrib. Co. v. May, 305 Ark. 56, 805 S.W.2d 625 (1991), the Arkansas Supreme Court held that Arkansas' garnishment provisions were unconstitutional because the statutes did not provide adequate notice to the garnishee that his property may be subject to satisfaction of the original debt when served with a writ of garnishment. The statutory provisions, however, were amended in 1991 to provide notice to the garnishee.